IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:13CR00046 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JEFFREY LEON BANKS,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Jeffrey Leon Banks, currently serving a state prison sentence for second-degree murder, has been indicted in this court on charges of threatening to kill the President of the United States. These threats were allegedly communicated in letters sent by the defendant from prison. After a court-ordered psychiatric evaluation, the defendant was found not competent to stand trial. The government subsequently moved to permit the Bureau of Prisons to involuntarily medicate the defendant in order to restore him to competency. After a hearing, the magistrate judge found that involuntary medication of the defendant would be inappropriate, and recommended denying the government's motions. Now before me are the government's objections to the magistrate judge's Report and Recommendations.

For the reasons that follow, I will accept the magistrate judge's recommendation, and deny the government's motion to involuntarily medicate the defendant.

I.

The facts of this case are set forth in detail in the magistrate judge's Report and Recommendation. A brief summary is as follows. On November 18, 2013, the defendant was indicted in this court on five counts of threatening to kill or harm the President of the United States in violation of 18 U.S.C. § 871, and five counts of mailing a threat to injure another, in violation of 18 U.S.C. § 876(c). At the time of the defendant's alleged crimes, he was an inmate at Virginia's Keen Mountain Correctional Center, serving a 15-year sentence for the second-degree murder of his wife. Based on the defendant's behavior at his initial appearance, in which he announced his intent to represent himself on the charges, and the defendant's mental health records, which revealed the defendant's extensive history of psychiatric treatment, the court granted the government's motion and committed the defendant to the Bureau of Prisons for the purpose of a competency evaluation. *See* 18 U.S.C. § 4241(b). The court also directed that the evaluators report on the defendant's sanity at the time of his alleged offenses. *See* 18 U.S.C. § 4242(a).

In a resulting written report, the Bureau of Prisons evaluator at the Metropolitan Correctional Center in New York (Kari M. Schlessinger, Ph.D., a

forensic psychologist) found that the defendant suffered from "Other Specified Schizophrenic Spectrum and Other Psychotic Disorder (delusions with disorganized thought content)."[1] (Competency to Stand Trial Evaluation 11, Feb. 27, 2014, ECF No. 28.) The evaluator concluded that the defendant was not competent to stand trial, since his delusional thoughts and disorganized thought process would unduly interfere with his ability to assist in his own defense. (*Id.* at 15.) Further, in a separate portion of the report, the evaluator opined that the defendant was not sane at the time of his alleged offenses, because his mental illness impaired the ability to appreciate the wrongfulness of his conduct. (Clinical Responsibility Evaluation 17, Feb. 27, 2014, ECF No. 28.). Finally, the evaluator concluded that the defendant's symptoms were sufficiently chronic that it was unlikely that his condition would improve without "appropriate interventions and a period of stabilization." (*Id.* at 12.)

Based on this report, and following a hearing on April 14, 2014, the magistrate judge found the defendant not competent to stand trial, and ordered him committed for the purpose of determining whether there is a substantial probability that in the foreseeable future the defendant will attain competency. *See* 18 U.S.C. § 4241(d)(1).

---

[1] The evaluator also found that the defendant suffers from Adult Antisocial Behavior, a condition not due to a mental disorder. (Clinical Responsibility Evaluation 12, Feb. 27, 2014, ECF No. 28.)

Following another examination, this time at the Federal Medical Center at Butner, North Carolina, by Bryon Herbel, M.D., a psychiatrist, and Adeirdre Stribling Riley, Ph.D., a psychologist, it was reported that the defendant was still incompetent to understand the proceedings against him or assist in his defense. (Forensic Evaluation 14, Nov. 10, 2014, ECF No. 35.) The principal mental diagnosis was schizophrenia. (*Id.* at 13.)

The defendant has denied having any mental health issues on multiple occasions, and has refused to take antipsychotic medication. Therefore, the evaluators examined the possibility of involuntarily medicating him. The report explained that the majority of incompetent defendants suffering from schizophrenia and related psychotic disorders who refuse medication, like the defendant, can be restored to competency with involuntary treatment. (*Id.* at 18.) The report stated that there is no empirical evidence that these disorders respond better to psychotherapy alone, and so alternative, less-intrusive treatments would be unlikely to restore the defendant's competency. Further, the evaluators noted that the defendant had a history of improvement in his mental condition with the use of antipsychotic medication, and that there was a substantial probability that the use of such medication would restore his competency to stand trial. (*Id.* at 25.) Despite the general risk of side effects of antipsychotic medications, such as sedation, neuromuscular effects, and metabolic effects, the report noted that the

defendant had denied experiencing any side effects from these medications in the past and was therefore substantially unlikely to experience these side effects. Based on these findings, the evaluators recommended involuntary treatment of the defendant with oral antipsychotic medication, or with long-acting injections of the medication should the defendant refuse to take it orally.

Based on this report, the government moved the court for permission to involuntarily medicate the defendant. The magistrate judge held an evidentiary hearing on the motion on January 15, 2015. The court received into evidence the evaluators' report, along with other exhibits, including records of the defendant's state court convictions, copies of the letters alleged to be the basis of the current federal charges, and copies of the defendant's state mental health records. Notably, the mental health records indicated that the defendant had been restored to competency to stand trial with antipsychotic medications twice in the past, and that the defendant denied experiencing any neuromuscular side effects, although at times he complained of vomiting and increased paranoia.

The letters attributed to the defendant, which are addressed to the justices of the Supreme Court, provide further insight into the defendant's condition at the time of his alleged offenses. The letters reveal the defendant's belief in an elaborate conspiracy involving the FBI, celebrities Beyoncé Knowles and Shawn Carter (known as Jay Z), drug dealers, and several family members and high

school classmates. The apparent object of this conspiracy was the rape of the defendant's daughters and subsequent cover-up. The letters declared the defendant's intent to kill everyone involved in the conspiracy, as well as President Obama. The evaluators from the Bureau of Prisons opined that the defendant was not sane at the time he allegedly penned these letters.

On March 3, 2015, the magistrate judge issued a Report and Recommendation, recommending that the government's motion for involuntary medication be denied. The magistrate judge examined the factors set forth in *Sell v. United States*, 539 U.S. 166 (2003), which held that an incompetent defendant may only be involuntarily medicated to restore competency for trial in rare circumstances. *Id.* at 180. The magistrate judge found that, although the government had met three of the four prongs of the *Sell* test by clear and convincing evidence, special circumstances lessened the government's interest in prosecution to the point that they did not outweigh the defendant's constitutionally protected liberty interest. The government has timely objected to the magistrate judge's findings, and those objections have been fully briefed and orally argued and are ripe for decision.

II.

Pursuant to Federal Rule of Criminal Procedure 59(b)(3) and 28 U.S.C. § 636(b)(1), I must review de novo any portions of the magistrate judge's report that were objected to by the government. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976) (noting that the magistrate judge's recommendation has no presumptive weight). The government does not object to any credibility determinations made by the magistrate judge, and thus I need not redetermine any facts in order to resolve the objections.

It is fundamental that an individual "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). At the same time, the Supreme Court has recognized that the right to be free from forcible medication is not unlimited. In *Sell*, the Court held that involuntary medication of a criminal defendant may comport with the Due Process Clause when the government's interest in bringing a mentally incompetent defendant to trial outweighs the defendant's liberty interest in being free from unwanted medication. 539 U.S. at 179. Given the nature of the intrusion, however, courts evaluating such requests "should ensure that [the] case is sufficiently exceptional to warrant the extraordinary measure of forcible medication." *United States v. White*, 620 F.3d 401, 413 (4th Cir. 2010).

In order to comply with the Constitution, the government has the burden of making a four-part showing by clear and convincing evidence that involuntary medication is warranted.[2]  *United States v. Bush*, 585 F.3d 806, 814 (4th Cir. 2009).  Specifically, the government must prove that: "(1) the government has an 'important' interest in trying [the defendant], (2) involuntary medication will 'significantly further' that interest, (3) involuntary medication is 'necessary' to further the government's interest, and (4) administration of the drugs is 'medically appropriate.'"  *United States v. Evans*, 404 F.3d 227, 232 (4th Cir. 2005) (quoting *Sell*, 539 U.S. at 180-81).

In this case, the magistrate judge found that factors two, three, and four of the *Sell* test were met.  She concluded that the government had shown by clear and convincing evidence that involuntarily medicating the defendant would "significantly further" the government's interest in prosecution, because the medication would be substantially likely to restore the defendant's competency and substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist in his trial defense.  *Sell*, 539 U.S. at 180-81.  She

---

[2]  The Court in *Sell* further instructed that the court should consider whether involuntary medication would be warranted for a purpose besides competency restoration, such as when a defendant poses a danger to himself or others or when medication is necessary to treat a gravely ill defendant.  539 U.S. at 181-82.  The magistrate judge found that no other grounds existed to treat the defendant in this case except to restore his competency to stand trial, and her findings are supported by the record.

found that involuntary medication would be necessary to further the government's interests, and that alternative, less-intrusive treatments such as cognitive behavioral therapy would be unlikely to restore the defendant's competency. Finally, she concluded that the use of involuntary medication would be medically appropriate, considering the defendant's history of improvement with these drugs.

    I find the magistrate judge's reasoning persuasive on each of these factors. The evidence in the record shows that antipsychotic medication is substantially likely to restore competency in defendants with schizophrenia and related disorders, and that less-intrusive alternatives have not been shown to be effective in the absence of medication. Further, the defendant has been successfully restored to competency using involuntary medication on several occasions, and has reported few side effects — evidence which strongly favors a finding that antipsychotic medication is substantially likely to restore him to competency without side effects that are likely to impair his ability to assist in his defense. Additionally, the experts at Butner reported as to several contingency plans to address side effects, including decreases in medication dosage, changes in diet and exercise, use of adjunctive medications to manage side effects, or treatment with an alternative antipsychotic medication. For these reasons, the use of involuntary medication is significantly likely to further the government's interest in prosecution, is necessary

to further that interest, and is medically appropriate for the defendant's specific circumstances.

The first factor, the importance of the government's interest, presents a far more difficult question, as noted by the magistrate judge. A governmental interest is "'important'" when the defendant "is accused of a 'serious' crime and 'special circumstances' do not undermine the government's interest in trying him for that crime." *Evans*, 404 F.3d at 235 (quoting *Sell*, 539 U.S. at 180). The magistrate judge found that the offense here — five counts of threatening to kill the President and five counts of mailing a threat to injure another, each of which carries a maximum sentence of five years — was serious. The magistrate judge reasoned that the facts of this case are similar to *Evans*, where the Fourth Circuit held that threatening to murder a federal judge in violation of 18 U.S.C. § 115(a)(1)(B), a crime which carries a maximum prison term of 10 years, was a serious offense under the *Sell* test. 404 F.3d at 238 (concluding that felony charge involving maximum statutory penalty of over ten years was "serious under any reasonable standard"). Since the defendant faces a potential maximum penalty of 50 years, there is little question but that the offenses here are serious.[3]

---

[3] Some courts have used the likely Sentencing Guidelines range to determine whether a crime is serious rather than the maximum statutory penalty, as is customary in the Fourth Circuit. *Compare United States v. Hernandez-Vasquez*, 513 F.3d 908, 913 (9th Cir. 2008) *with Evans*, 404 F.3d at 238. As the magistrate judge noted, there is little

However, the Court in *Sell* also cautioned that courts must consider whether "[s]pecial circumstances may lessen the importance" of the government interest, based on the facts of the individual case. 539 U.S. at 180. The Court emphasized that the special circumstances inquiry is broad, as the court may consider whether the defendant is subject to civil commitment or has been confined for a lengthy period of time, but may also consider other factors. *Id.*; *see also White*, 620 F.3d at 412-13 ("[T]he flexibility of the special circumstances determination may identify factors militating in favor of the government's interest in going forward with a prosecution . . . and the analysis may also identify factors further undermining the government's interest.").

The magistrate judge first considered the fact that the defendant has already been confined pretrial for more than a year, and found that this did not lessen the government's interest, since he faces a sentence of many more years if convicted. The magistrate judge also found that a delay in prosecution would not prejudice the government's case, since the alleged threats were memorialized in written letters. Thus, this fact did not lessen or strengthen the government's interest.

However, the magistrate judge found that four special circumstances undermined the government's interest in prosecuting the defendant. First, the defendant will not be released from prison on his murder conviction until July 30,

---

way of knowing at this point what guidelines range would be appropriate if the defendant is convicted, but his prior murder conviction would likely increase that range.

2021, at the earliest, regardless of whether he is restored to competency or not. Second, even when released, the defendant's prior involuntary commitments and his murder conviction will prevent him from legally acquiring or possessing firearms. Third, the government may move to hospitalize the defendant indefinitely under 18 U.S.C. § 4246, on the basis that his release would create a substantial risk of bodily injury to another, particularly given his criminal history. Finally, and compelling, it is problematic whether the government could obtain a conviction on the present charges, since the defendant's Bureau of Prisons evaluations and the content of his letters strongly support a verdict that the defendant was not sane at the time of the offenses. If the defendant is found not guilty solely by reason of insanity, he will be committed pursuant to 18 U.S.C. § 4243 until he is able to prove that his release will not create a substantial risk of bodily injury to another person. As the magistrate judge noted, the defendant's murder conviction and his continuous refusal of antipsychotic medication may make it difficult for him to meet this burden. Based on all of these factors, the magistrate judge concluded that the special circumstances of this case undermine the government's interest to the point that they do not outweigh the defendant's constitutionally protected liberty interest.

The government objects to the magistrate judge's report, on several grounds. First, the government contends that, although the potential to civilly commit the

defendant pursuant to 18 U.S.C. § 4246 is a factor for the court to consider, it should not be determinative under the *Sell* test. 539 U.S. at 180 ("We do not mean to suggest that civil commitment is a substitute for a criminal trial."). The government asserts that there is no evidence regarding the likelihood that the defendant will be civilly committed, and that other courts have found such a lack of evidence sufficient to conclude that the option of civil commitment is not a special circumstance that lessens the government's interest in prosecution. *See United States v. Gillenwater*, 749 F.3d 1094, 1102 (9th Cir. 2014); *United States v. Chatmon*, 718 F.3d 369, 375 (4th Cir. 2013); *United States v. Mackey*, 717 F.3d 569, 574 (8th Cir. 2013). Rather, the government contends that the only evidence of the defendant's dangerousness is the Butner report's conclusion that "[t]here is no convincing evidence Mr. Banks currently poses a substantial risk of dangerousness in the current conditions of his confinement at FMC Butner." (Forensic Evaluation 15, Nov. 10, 2014, ECF No. 35.)

I find the government's arguments unpersuasive. Although the possibility of civil commitment is an important factor, there are also factors weighing against involuntary medication, as explained in the Report and Recommendation. Further, the cases cited by the government are materially distinguishable. In *Chatmon,* 718 F.3d at 371, 375, and *Gillenwater*, 749 F.3d at 1101, the defendants did not have a violent criminal history, unlike the defendant in this case, whose history of

-13-

violence and continued violent threats would likely favor civil commitment. In *Mackey* there was little evidence that the defendant, a convicted sex offender, was actually insane at the time he committed the offense, making the prospect of civil commitment far less certain than this case, in which several different experts have concluded that the defendant was not sane at the time of his alleged offenses. 717 F.3d at 574.

Finally, the Butner report's conclusion regarding the defendant's lack of dangerousness was limited to his current condition of confinement, and thus has no direct bearing on the threat he may pose upon release from prison. *See United States v. Ruiz-Gaxiola*, 623 F.3d 684, 694 n.6 (9th Cir. 2010) (noting that a determination that a defendant is not dangerous in confinement does not answer whether defendant will be dangerous when released). In short, the defendant's murder conviction, his continued threats of violence and paranoid delusions, and his refusal to take antipsychotic medication or even acknowledge his mental illness are all grounds to conclude that civil commitment is a reasonable possibility, and thus a legitimate factor that lessens the government's interest in prosecution.

Next, the government argues that its interest in prosecution remains significant even if the defendant is found not guilty by reason of insanity, due to the differences in the burden of proof between the statute authorizing civil commitment, 18 U.S.C. § 4246, and the statute governing commitment of persons

found not guilty due to insanity, 18 U.S.C. § 4243. Although § 4246 requires the government to prove that the defendant poses a danger to others, whereas § 4243 requires the defendant to prove he is not a danger, these differences do not significantly bolster the government's interest in prosecution, given that the unique facts of this case make civil commitment a legitimate possibility under either statute. *See Sell*, 539 U.S. at 180 (noting that the possibility of civil commitment "diminish[es] the risks that ordinarily attach to freeing without punishment one who has committed a serious crime").

Finally, the government asserts that the magistrate judge erroneously relied on the fact that the defendant will be legally prohibited from possessing firearms, because the defendant could still obtain firearms illegally. The potential for civil commitment in this case may yet render the government's argument moot. More importantly, although the act of law-breaking is as ancient as civilization itself, I must presume that the Executive Branch will act diligently to enforce the criminal laws — particularly against potentially dangerous offenders.

### III.

For these reasons, is **ORDERED** as follows:

1. The magistrate judge's Report and Recommendation (ECF No. 45) is ACCEPTED; and

2. The Motion for Involuntary Medication and Treatment (ECF No. 37) is DENIED.

ENTER: April 29, 2015

/s/ James P. Jones
United States District Judge